WALTER WILHELM LAW GROUP
A Professional Corporation
Riley C. Walter #91839
Kathleen D. DeVaney #156444
Danielle J. Bethel #315945
205 East River Park Circle, Ste. 410
Fresno, CA 93720
Telephone: (559) 435-9800
Facsimile: (559) 435-9868
E-mail: rileywalter@w2lg.com

Chapter 9 Counsel for the District

MCCORMICK, BARSTOW, SHEPPARD,
WAYTE & CARRUTH LLP
Timothy L. Thompson, #133537
Mandy L. Jeffcoach, #232313
Nikole E. Cunningham, #277976
7647 North Fresno Street
Fresno, California 93720
Telephone:    (559) 433-1300
Facsimile:    (559) 433-2300

District Counsel

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

## FRESNO DIVISION

| | |
|---|---|
| In re | Case No. 17-13797 |
| TULARE LOCAL HEALTHCARE DISTRICT, dba TULARE REGIONAL MEDICAL CENTER, | Chapter 9 |
| Debtor. | Adv. Proc. No.:   17-01095-B |
| Tax ID #    94-6002897<br>Address:      869 N. Cherry Street<br>Tulare, CA 93274 | **COUNTERCLAIM AGAINST HCCA FOR:**<br>(1) BREACH OF CONTRACT;<br>(2) ACCOUNTING;<br>(3) FRAUD;<br>(4) NEGLIGENT MISREPRESENTATION;<br>(5) CONCEALMENT;<br>(6) CONVERSION;<br>(7) BREACH OF FIDUCIARY DUTY;<br>(8) CALIFORNIA FALSE CLAIMS ACT;<br>(9) CANCELLATION OF DEED OF<br>      TRUST;<br>(10) DECLARATORY RELIEF;<br>(11) EQUITABLE SUBORDINATION;<br>AND PUNITIVE DAMAGES |

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

1

COUNTERCLAIM AGAINST HCCA

HEALTHCARE CONGLOMERATE
ASSOCIATES, LLC,

          Plaintiff,

    v.

TULARE LOCAL HEALTHCARE
DISTRICT dba TULARE REGIONAL
MEDICAL CENTER,

          Defendant.

TULARE LOCAL HEALTHCARE
DISTRICT dba TULARE REGIONAL
MEDICAL CENTER,

          Counterclaimant,

    v.

HEALTHCARE CONGLOMERATE
ASSOCIATES, LLC, and ROES 1 through 50,

          Counterdefendant.

Tulare Local Healthcare District dba Tulare Regional Medical Center ("the District"), for its Counterclaim against HealthCare Conglomerate Associates, LLC ("HCCA"), complains and alleges as follows:

## NATURE OF THE ACTION

1.     This Counterclaim arises from multiple and flagrant breaches of the duties of trust and loyalty owed to the District by its former manager HCCA. The District's relationship with HCCA began in May 2014 when the District entered into a Management Services Agreement ("MSA") with HCCA. Pursuant to the MSA, the Board of Directors for the District turned over control of the District's operations and management to HCCA, including operations of the hospital and the related healthcare clinics. However, the terms of the MSA were grossly unfavorable to the District, unconscionable, and void as against public policy. Furthermore, for the years following execution of the MSA, HCCA engaged in a pattern and practice of conduct designed to defraud the District, embezzle the District's money, and convert the District's property.

2.     In order to maintain its position as manager and avoid detection, HCCA concealed critical financial and other information from the District's Board of Directors. On information and

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

2
COUNTERCLAIM AGAINST HCCA

belief, HCCA knowingly presented false financial statements and concealed material information in its reports to the District's Board of Directors in order to hide its fraudulent conduct, prevent the District from taking action to remove HCCA as its manager, and prevent the District from mitigating the damages sustained as a result of HCCA's conduct. As a result of HCCA's misrepresentations and refusal to provide information to the District, the District has yet to discover the full nature and extent of HCCA's wrongful conduct. However, on information and belief, such wrongful conduct includes but is not limited to: (1) intentional and willful refusal to provide required financial and other information to the District's Board of Directors; (2) knowingly and intentionally providing false financial and other information to the District's Board of Directors; (3) conversion of the District's personal property, including medical supplies and equipment; (4) sale of District assets without authorization; (5) conversion of the District's money, including the misappropriation of sales proceeds from the unauthorized sale of District assets when said proceeds were intended to aid the District in operational expenses; (6) diversion of District money into accounts owed by HCCA or other related entities to which the District has no access, including an entity, Tulare Asset Management, LLC, that, on information and belief, is controlled by HCCA and/or its managing member Yorai Benzeevi; (7) intentional interference with the seating of a newly elected member of the Board of Directors in order to obtain loans and/or sales proceeds for the benefit of HCCA; (8) knowingly presenting false or fraudulent claims for payment or approval to the Board of Directors or other District officials; (9) the recording of a fraudulent deed of trust against the District's real property in order to secure unsubstantiated debts and purported notes that were never authorized or executed by the District; and (10) improper use and/or misappropriation of Build America Bond proceeds.

　　　　3.　　　Through the activities alleged in this Counterclaim, HCCA engaged in fraud, conversion, and breach of fiduciary duty, among other claims. Accordingly, the District seeks among other available remedies: (i) compensatory damages, (ii) punitive damages, (iii) restitution of all amounts for which HCCA has been unjustly enriched, (iv) constructive trust, (v) prejudgment interest, (vi) attorneys' fees and costs, (vii) an accounting, and (viii) treble damages pursuant to California Government Code section 12651 et seq. Additionally, the District seeks declaratory relief relating to the MSA and other agreements between HCCA and the District, and seeks equitable subordination of

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

3
COUNTERCLAIM AGAINST HCCA

1    any claims asserted by HCCA against the District in this Chapter 9 case.

2                          **THE PARTIES & JURISDICTION**

3          4.      The District is, and at all times relevant was, a local healthcare district in Tulare,

4    California and organized under sections 32000, et al. of the California Health and Safety Code.

5          5.      Counterdefendant HCCA is, and at all times relevant was, a California limited liability

6    company.   Until recently, HCCA maintained its principle place of business in Tulare County,

7    California but, on information and belief, now maintains its principle place of business in Los

8    Angeles, California.

9          6.      The District is uninformed as to the true names, capacities and identities of

10   Counterdefendant ROES 1 through 50, inclusive, but is informed and believes and thereon alleges that

11   said ROE Counterdefendants are responsible for the harm herein complained of and the District will

12   amend this Counterclaim with the appropriate charging allegations when their true names, capacities

13   and identities are ascertained.

14         7.      The District is informed and believes and thereon alleges that each of the ROE

15   Counterdefendants are, and at all times herein relevant were, the agent, joint venturer and/or co-

16   conspirator of the other Counterdefendants, and in doing the things herein alleged, were acting within

17   the scope and course of said agency, joint venturer and concert of action, and by reason thereof, each

18   of said Counterdefendants are jointly and severally liable for the harm described.

19         8.      Pursuant to 28 U.S.C. §§ 157, 1334(b), and 1452(a), the United States Bankruptcy

20   Court for the Eastern District of California has jurisdiction over each and every cause of action

21   asserted against the District in this Action by HCCA.  Further, pursuant to Federal Rules of Civil

22   Procedure, Rule 13(a), each and every cause of action asserted herein by the District against HCCA

23   constitutes a compulsory counterclaim and therefore must be asserted in this Action. The District

24   requests the Court make a final order or judgment in this proceeding and consents to the entry of final

25   orders or judgment by the Bankruptcy Court.

26

27

28

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

## FACTS COMMON TO ALL COUNTERCLAIMS

### The Agreements Between The District and HCCA

9.     The District is a California healthcare district covering a large part of Western Tulare County, which serves over 70,000 people. Despite decades of self-management, on May 29, 2014, the District, through former members of its Board of Directors, entered into an integrated management contract and arrangement with HCCA involving four sub-agreements, consisting of a 15-year Management Services Agreement (the MSA), an Interim Operating Agreement, a Joint Operating Agreement and an Option Agreement (hereinafter collectively "the Agreements"). The MSA is comprised of a several part agreement by which the then Board of Directors for the District agreed to turn over control over the District's operations and management to HCCA, including operations of its hospital and healthcare facilities.

10.     The MSA and the Agreements were grossly unfavorable to the District, and included several unconscionable terms and conditions which are against public policy, including but not limited to the below summarized terms:

2(c):   Irrevocability of Agreement. The District "irrevocably waives and relinquishes any right, power or authority existing at law or in equity to terminate this Agreement, except in strict accordance with the express provisions of this Agreement."

3(d)    Relationship.

(i) Interference. The District shall not interfere with HCCA's decisions. The District representatives shall not access the hospital, clinics and other facilities, except upon prior arrangement with HCCA, except in the event of emergency. The District shall not access data systems utilized in connection with operations, unless specifically authorized by HCCA in each instance.

(ii) Confidentiality. The District and Board shall not disclose confidential or negative information or take action that is materially detrimental to the reputation of HCCA, or make statements that defame/criticize personal or business reputation, practices or conduct of HCCA to anyone other than HCCA CEO. Prohibition extends to new media, bondholders, industry analysis, competitors, strategic partners, vendors, employees and clients.

4(b)(ix)    Employee Lease Payment. The District shall pay HCCA, in addition to other management fees, an amount equal to 130% of the compensation of all employees (including wages, salary, compensation, employee

benefits, insurance, workers' compensation insurance, unemployment compensation coverage, taxes, witholdings, contributions, commissions, bonuses and travel expenses, business expenses, and retirement).

4(h)(iii)    Appointment of Attorney-in-Fact. The District irrevocably appoints HCCA as its true and lawful attorney-in-fact to take the following actions: (1) bill patients and third-party payors; (2) collect charges; (3) take possession of and endorse all cash, notes, checks money orders, insurance payments and other instruments in the name of the District; (4) deposit collections; (5) make withdrawals from the Depository Account; (6) place accounts for collection, settle and compromise claims and institute legal action for the recovery of accounts; and (7) execute instruments.

4(n)(ii)    HCCA Authority to Bind the District. HCCA may enter into operating contracts in the District's name. For contracts in HCCA's name, the District shall reimburse HCCA for all costs at HCCA's discretion.

6(a)    Management Fee. HCCA shall receive a monthly fee of $225,000, the amount of which is to increase each year under the Contract.

10 (b)(i)    Termination Fee. If MSA terminated due to default by the District or any other reason, other than termination by HCCA, the District shall pay a termination fee within 5 days of termination of MSA.

(ii)    Amount. Termination fee shall be an amount equal to $70,000 per month first increased by CPI and then multiplied by the remaining number of months in the term (not to exceed 120 months), discounted to present value using the discount rate of the Federal Reserve Bank of San Francisco at the time of termination plus 1%.

11.    On information and belief, the Agreements were presented to the District on short notice and were executed under duress due to threats that the District would become bankrupt and would be forced to close absent execution of the Agreements.

**Turnover In The Board Of Directors And Interference By HCCA**

12.    Several years after HCCA began to manage the District, the public became concerned and dissatisfied with HCCA's management of the District. On information and belief, the public was concerned, among other things, with HCCA's failure to provide accurate and complete financial information and with findings in the District's audits. On information and belief, the public became suspicious of HCCA and believed that HCCA was committing fraud upon the District. The public

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

6

COUNTERCLAIM AGAINST HCCA

1    also became concerned with the exorbitant amounts of money to be paid to HCCA under the

2    Agreements, and feared that such high management fees were not sustainable for the District.

3          13.    Concerned that the District's prior Board of Directors was acting against the District's

4    best interests, the public voted to oust 2 of the District's members of the Board of Directors in the

5    election in November 2016.  At that time, current Board Members Michael Jamaica and Kevin

6    Northcraft were elected to the Board of Directors for the District.  Thereafter, in July 2017, a special

7    recall election was held for the recall of then Board member Parmod Kumar.  On July 11, 2017,

8    Parmod Kumar was recalled from his position on the Board of Directors for the District, and Senovia

9    Gutierrez was elected to replace Parmod Kumar for the remaining balance of Parmod Kumar's term.

10   Thereafter, the remaining two Board Members, Richard Torrez and Linda Wilbourn, resigned from

11   their positions on the Board of Directors.  As a result, prior to the date the District filed Chapter 9,

12   there was a complete change in the Board of Directors for the District.

13         14.    Despite an overwhelming vote of the public in July 2017, in excess of 80% in favor of

14   Parmod Kumar's recall from the District's Board of Directors, HCCA inexplicably undertook

15   concerted and targeted efforts to interfere with the seating of Senovia Gutierrez to the District Board.

16   After the election results were announced, and in advance of the first regularly scheduled meeting of

17   the Board after the recall election (July 26, 2017), Board Member Kevin Northcraft made two written

18   requests to HCCA asking that HCCA add to the agenda for the Board meeting an item to declare the

19   results of the special recall election.  Despite his requests, HCCA intentionally failed and refused to

20   add such an item to the Board's agenda for the meeting.  Thereafter, at the July 26, 2017 meeting, at

21   HCCA's urging, the then Board Chair refused to declare Ms. Gutierrez's status as a Board member,

22   citing "legal concerns" expressed by HCCA's then legal counsel, Baker Hostetler and Bruce Greene,

23   who HCCA had also secured to serve as legal counsel for the District.

24         15.    Subsequent efforts thereafter to seat Ms. Gutierrez were obstructed by the District's

25   then counsel, at HCCA's urging and behest, because the District's then counsel (Baker Hostetler and

26   Bruce Greene) simultaneously represented HCCA and was acting at HCCA's direction and not in the

27   best interests the District.  Such efforts to obstruct seating Ms. Gutierrez to the Board of Directors

28   included refusing to place agendas on HCCA's website, unilaterally cancelling a noticed Board

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

7

COUNTERCLAIM AGAINST HCCA

1   meeting and attempting to lock the Board out of the District's meeting room. Notably, at no point did

2   HCCA offer any solutions; instead HCCA engaged in delay tactics, which seriously compromised and

3   disrupted the operations of the District and made it impossible for the current Board to fulfill the

4   responsibilities as Directors of a public hospital district. On information and belief, HCCA undertook

5   such efforts to obstruct seating Ms. Gutierrez to the Board of Directors so that HCCA could attempt to

6   obtain unauthorized loans in the name of the District and sell District assets for HCCA's own use and

7   benefit.

8        16.      In or about September 2017, and after judicial intervention, HCCA finally ceased its

9   tactics to interfere with confirmation of Ms. Gutierrez to the Board of Directors. Despite being told by

10   HCCA over several months that the hospital was operating at a significant profit, on September 8,

11   2017, the District was provided with a notice of default from HCCA, claiming for the first time, that

12   the District owed HCCA significant money and that the District did not have adequate funds to pay its

13   liabilities. This notice was followed by a board meeting on September 27, 2017, during which HCCA,

14   for the first time, indicated that the District was out of money and was in dire financial crisis. This

15   was the first time the Board had been advised of this, despite repeated requests by the Board for

16   financial information dating back to January 2017. In fact, this representation was completely

17   contrary to the information HCCA had previously provided the Board concerning the viability of the

18   hospital and purportedly increasing profits.

19        **Unauthorized Transactions By HCCA For Personal Gain**

20        17.      Beginning in August 2017, the District became aware that HCCA was undertaking

21   efforts to obtain unauthorized loans in the name of the District and/or sales proceeds from the sale of

22   District assets. HCCA attempted to secure such loans/sales proceeds by refusing to acknowledge

23   express directives of the Board of Directors including a resolution of the Board revoking HCCA's

24   authority to enter into any loans. HCCA refused to acknowledge the directives of the Board of

25   Directors based upon the untenable legal position that Ms. Gutierrez was not a member of the Board

26   of Directors, and therefore Board Members Mr. Northcraft, Mr. Jamaica, and Ms. Gutierrez did not

27   constitute a majority of the Board. On information and belief, HCCA asserted this meritless legal

28   argument regarding Ms. Gutierrez for the sole purpose of securing loan money and/or sales proceeds

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

8

COUNTERCLAIM AGAINST HCCA

at the District's expense and for HCCA's sole benefit.

18.     The District later discovered that HCCA did in fact enter into an unauthorized transaction in August 2017. Specifically, HCCA sold District assets and equipment in the amount of $3,000,000. In order to secure the proceeds, HCCA wrongfully and without the District's authorization, sold District assets to a Celtic Leasing under a leaseback arrangement. On or about August 31, 2017, Celtic Leasing provided HCCA with $3,000,000 and such monies were deposited directly into an account exclusively controlled by HCCA and its related entity Tulare Asset Management, LLC. Despite previous representations by HCCA to the Board that any such proceeds would be used for District operational expenses or to pay the District's accounts payable, on information and belief, the entirety of the sales proceeds were provided to HCCA or others at HCCA's direction.

19.     The District has also learned that HCCA may have transferred funds by and between Southern Inyo Healthcare District (another public entity hospital previously managed by HCCA) and Tulare in excess of $3,000,000. See the Declaration of Ashley M. McDow, which is attached hereto as Exhibit "1" and incorporated herein by reference, filed in United States Bankruptcy Court, Eastern District of California-Fresno Division, Case Number 2016-10015 in re Southern Inyo Healthcare District, Debtor, in support of an emergency motion for authority to immediately terminate the HCCA management agreement with Southern Inyo Healthcare District. Further, on information and belief, HCCA transferred the District's medical supplies and equipment to Southern Inyo Healthcare District without compensation to the District and for HCCA's benefit. See the recording of the hearing held on October 17, 2017, which is Document Number 330 on the Docket in Case Number 2016-10015.

20.     Finally, the District recently discovered the existence of a written instrument that purports to be a deed of trust to certain real property owned by the District, which is generally referred to as the Evolutions Property, located in the County of Tulare, State of California, described in the deed attached hereto as Exhibit "2" and incorporated herein by reference (hereinafter referred to as the "Evolutions Deed of Trust"). The contents of the Evolutions Deed of Trust are as set forth in Exhibit 2.

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

9

COUNTERCLAIM AGAINST HCCA

21.     The Evolutions Deed of Trust generally seeks to secure payment and performance of purported promissory notes in favor of HCCA in the amount of $10,233,950.05. However, on information and belief, the District never executed any promissory notes in favor of HCCA, and HCCA has failed to provide copies of said promissory notes to the District despite repeated demands. On information and belief, the promissory notes referenced in the Evolutions Deed of Trust, if such notes exist, are fraudulent and void.

22.     The Evolutions Deed of Trust constitutes an unlawful and fraudulent lien against public property. The Evolutions Deed of Trust was purportedly executed by the District on September 27, 2017 by Yorai Benzeevi ("Dr. Benzeevi"). However, the District did not authorize Dr. Benzeevi to execute the Evolutions Deed of Trust on its behalf, and the District was unaware of the existence of the Evolutions Deed of Trust until recently. Importantly, according to filings with the California Secretary of State, Dr. Benzeevi is the managing member of HCCA. At the time Dr. Benzeevi executed the Evolutions Deed of Trust, purportedly on behalf of the District, Dr. Benzeevi had no authority to execute the Evolutions Deed of Trust on behalf of the District and was acting for the exclusive benefit of HCCA and in breach of the fiduciary duties owed to the District.

## FIRST CAUSE OF ACTION

### (Breach of Contract – against HCCA and ROES 1 through 10)

23.     The District refers to and realleges each and every allegation contained in Paragraphs 1 through 22 above, and by this reference, incorporates the same herein as though fully set forth.

24.     On or about May 29, 2014, the District and HCCA entered into the MSA (incorporating and including the Agreements), wherein, HCCA was to manage and operate the District's hospital located in Tulare, California, along with related clinics and other facilities as defined in the MSA. Attached hereto as Exhibit "3" and incorporated herein by reference is a copy of the MSA.

25.     The District has performed all terms, covenants, promises and conditions required of it under the MSA except to the extent such performance was excused by the conduct of HCCA.

26.     HCCA has breached the MSA by, among other things: failing and refusing to account to the District; denying the District the right to inspect, audit, examine and make copies of the books

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

10

COUNTERCLAIM AGAINST HCCA

1  of account for the District maintained by HCCA; intentionally inflating employee staffing and payroll

2  expenses in order to increase monies paid to HCCA; improperly managing the District's hospital and

3  related healthcare clinics; and engaging in acts of fraud, embezzlement, and other self-dealing.

4      27.     As a direct and proximate result of HCCA's breaches of the MSA, the District has been

5  damaged in an amount to be determined at the time of trial.

**SECOND CAUSE OF ACTION**

**(Accounting – against HCCA and ROES 1 through 10)**

8      28.     The District refers to and realleges each and every allegation contained in paragraphs 1

9  through 27 above, and by this reference, incorporates the same herein as though fully set forth.

10     29.     Pursuant to the MSA, specifically Section 7, subsections (a) through (g), HCCA was

11 obligated to supervise the maintenance of the books of account for the operation of the District, and

12 was further responsible for "the oversight of the Hospital and the Clinics and Other Facilities'

13 accounting functions". The MSA further obligated HCCA as follows: (1) HCCA was required to

14 provide the District with reports and financial statements reasonably requested, including general

15 ledger/financial accounting, accounts payable, payroll, annual audits, cost reporting, and monthly

16 bank reconciliation; (2) monthly financial statements, including income statements, balance sheets,

17 and statement of cash flows; (3) quarterly financial statements including unaudited financial

18 statements reflecting the operations of the District for the quarter in question; (4) annual financial

19 statements, including an unaudited balance sheet of the District as of fiscal year end and a related

20 statement of income or loss for the relevant fiscal year; and (5) to permit the inspection, audit,

21 examination and copying of the books of account of the District maintained by HCCA. (See Ex. 3,

22 Sect. 7.)

23     30.     Pursuant to the terms of the MSA, HCCA owed a duty to the District to account for all

24 revenues received with respect to the hospital, and also to provide such accounting to the District on a

25 monthly, quarterly, and annual basis, and upon reasonable request.

26     31.     Despite HCCA's obligations to account under the MSA, HCCA has failed and refused

27 to provide such an accounting to the District.

28     32.     The amount of money due by HCCA to the District in connection with its management

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

11

COUNTERCLAIM AGAINST HCCA

1    of the District per the MSA is unknown to the District and cannot be ascertained without an

2    accounting by HCCA. The District has demanded that HCCA provide an accounting of all revenue

3    received by HCCA, however, to date, HCCA has not provided the District with a full, complete and

4    accurate accounting.

**THIRD CAUSE OF ACTION**

**(Fraud – Against HCCA and ROES 1 Through 10)**

7        33.      The District refers to and realleges each and every allegation contained in paragraphs 1

8    through 32 above, and by this reference, incorporates the same herein as though fully set forth.

9        34.      Beginning in 2016, HCCA represented to the District that loans and/or sales proceeds

10    from the sale of District assets were needed to cover operational expenses for the hospital and related

11    healthcare facilities. As a result, HCCA requested that the Board of Directors for the District

12    authorize HCCA to obtain loans/sales proceeds on behalf of the District, using the District's real

13    and/or personal property as collateral to obtain such loans/sales proceeds. HCCA represented to the

14    District that any monies obtained from the loans/sales proceeds would be used to satisfy increasing

15    accounts payable and other creditors of the District. Additionally, HCCA represented to the District

16    that the money obtained from the loans/sales proceeds would be used to pay ongoing operational

17    expenses of the District.

18        35.      HCCA's above-described representations were false. Contrary to HCCA's express

19    representations to the District, HCCA's secret intention was to obtain loan monies/sales proceeds in

20    the District's name, using the District's property as collateral, and keep the proceeds for HCCA's

21    personal use and benefit. In or about August 2017, HCCA did in fact obtain sales proceeds in the

22    amount of $3,000,000, and in order to secure such proceeds, HCCA sold certain District assets to

23    Celtic Leasing under a leaseback arrangement. Rather than providing the sales proceeds to the

24    District as HCCA had previously represented and promised, HCCA caused the proceeds to be

25    deposited into an account held by a separate legal entity, Tulare Asset Management, LLC. On

26    information and belief, HCCA and/or its principals have exclusive control over Tulare Asset

27    Management, LLC, and HCCA directed and funneled the proceeds to the Tulare Asset Management,

28    LLC bank account so that such monies could be kept by HCCA and could not be utilized by the

MCCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

12

COUNTERCLAIM AGAINST HCCA

District. The sales proceeds were never provided to the District, and such monies were never made available to the District to cover operational or other expenses. On information and belief, the full $3,000,000 obtained by HCCA was kept by HCCA for its benefit. As a result, the District is now obligated to pay Celtic Leasing in excess of $80,000 per month, or risk forfeiture of the District's property that was sold by HCCA under the leaseback arrangement.

36.    At the time HCCA made the above-referenced misrepresentations, HCCA knew that the representations were false, or made such misrepresentations recklessly and without regard for its truth.

37.    When HCCA made the above-referenced misrepresentations to the District, HCCA intended that the District rely on the misrepresentations. Specifically, HCCA made the misrepresentations to the District with the intent that the District rely on HCCA's representations and authorize HCCA to obtain the money in question (and other contemplated loans).

38.    The District reasonably relied on HCCA's representations to the Board of Directors given that HCCA was the District's manager and fiduciary at the time the representations were made.

39.    As a result of HCCA's misrepresentations, the District was damaged in an amount according to proof. HCCA's conduct, and the District's reasonable reliance on HCCA's misrepresentations, was a substantial factor in causing the District's harm.

40.    HCCA's acts were willful, oppressive, fraudulent and malicious. Such acts were committed with the intent to vex, annoy, and disrupt the District's ability to conduct business. Accordingly, an award of exemplary and punitive damages is warranted.

## FOURTH CAUSE OF ACTION

### (Negligent Misrepresentation – Against HCCA and ROES 1 Through 10)

41.    The District refers to and realleges each and every allegation contained in paragraphs 1 through 40 above, and by this reference, incorporates the same herein as though fully set forth.

42.    As outlined hereinabove, beginning in 2016, HCCA represented to the District that loans and/or sales proceeds from the sale of District assets were needed to cover operational expenses for the hospital and related healthcare facilities. As a result, HCCA requested that the Board of Directors for the District authorize HCCA to obtain loans/sales proceeds on behalf of the District,

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

13
COUNTERCLAIM AGAINST HCCA

1   using the District's real and/or personal property as collateral to obtain such loans/sales proceeds.

2   HCCA represented to the District that any monies obtained from the loans/sales proceeds would be

3   used to satisfy increasing accounts payable and other creditors of the District. Additionally, HCCA

4   represented to the District that the money obtained from the loans/sales proceeds would be used to pay

5   ongoing operational expenses of the District.

6       43.      As outlined hereinabove, HCCA's above-described representations were not true.

7       44.      Although HCCA may have honestly believed that the representations were true, HCCA

8   had no reasonable grounds for believing the representations were true when it made the

9   representations to the District.

10      45.      HCCA intended that the District rely on its representations and authorize HCCA to

11   secure loans and/or sales proceeds in the District's name or through use of the District's assets.

12      46.      The District reasonably relied on HCCA's representations regarding the nature and

13   purpose of the loans/sales proceeds.

14      47.      As a result of HCCA's misrepresentations, the District was damaged in an amount

15   according to proof. HCCA's conduct, and the District's reasonable reliance on HCCA's

16   misrepresentations, was a substantial factor in causing the District's harm.

17                     **FIFTH CAUSE OF ACTION**

18           **(Concealment – against HCCA and ROES 1 through 10)**

19      48.      The District refers to and realleges each and every allegation contained in paragraphs 1

20   through 47 above, and by this reference, incorporates the same herein as though fully set forth.

21      49.      By virtue of the MSA, HCCA was the designated manager of the District. As a result

22   of that relationship, HCCA owed fiduciary duties and obligations to the District.

23      50.      Throughout the parties' relationship, HCCA intentionally failed to disclose certain facts

24   to the District, including providing inaccurate financial accounting of the District's operations. On

25   information and belief, HCCA's conduct of concealment includes but is not limited to: HCCA's

26   refusal to provide financial records and information to the District despite demand, HCCA's provision

27   of misleading financial reports and updates to the District, and HCCA's provision and maintenance of

28   intentionally false financial records or data to the District. Although the full extent of HCCA's

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

14

COUNTERCLAIM AGAINST HCCA

wrongful conduct and concealment is not yet known, the District is informed and believes that HCCA intentionally and improperly included balances for bank accounts belonging to other entities, namely Tulare Asset Management, LLC, in the District's books so as to conceal HCCA's diversion of District assets. Specifically, on information and belief, by artificially inflating the District's books and reflecting monies that were no longer held in the District's accounts, HCCA disguised the improper transfers of money out of the District's accounts so such transactions would go unnoticed.

51. The District did not know of the concealed facts, and further, even when the District requested information from HCCA, HCCA intentionally concealed the facts from the District.

52. At all times relevant herein, HCCA intended to deceive the District by concealing the facts and other financial information that would have revealed HCCA's misconduct.

53. Had the District been aware of the concealed facts, it would have behaved differently, including but not limited to taking action to remove HCCA as the District's manager and seeking recovery of losses sustained as a result of HCCA's misconduct.

54. As a result of HCCA's concealment, the District has been damaged in an amount according to proof.

55. HCCA's concealment was a substantial factor in causing the District's harm.

56. HCCA's acts were willful, oppressive, fraudulent and malicious. Such acts were committed with the intent to vex, annoy, and disrupt the District's ability to conduct business. Accordingly, an award of exemplary and punitive damages is warranted.

### SIXTH CAUSE OF ACTION

**(Conversion – against HCCA and ROES 1 through 10)**

57. The District refers to and realleges each and every allegation contained in paragraphs 1 through 56 above, and by this reference, incorporates the same herein as though fully set forth.

58. At some point after HCCA became the District's manager, HCCA began to engage in a pattern and practice of converting the District's property. Specifically, on information and belief, HCCA converted both the District's money and personal property. Such instances of conversion include but are not limited to: the wrongful misappropriation of sales proceeds in the amount of $3,000,000; the misappropriation of the District's medical supplies and equipment for HCCA's

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

15
COUNTERCLAIM AGAINST HCCA

1　separate business purposes and uses, including the unauthorized transfer of the District's medical

2　equipment to Southern Inyo Healthcare District at HCCA's direction; the misappropriation of the

3　District's medical supplies and other medical equipment; and the unauthorized sale of the District's

4　assets to Celtic Leasing in order to obtain proceeds for HCCA's benefit.

5　　　　59.　　As a result of HCCA's conversion, the District has been damaged in an amount

6　according to proof.

7　　　　60.　　HCCA's conversion of the District's property was a substantial factor in causing the

8　District's harm.

9　　　　61.　　HCCA's acts were willful, oppressive, fraudulent and malicious.  Such acts were

10　committed with the intent to vex, annoy, and disrupt the District's ability to conduct business.

11　Accordingly, an award of exemplary and punitive damages is warranted.

12　　　　　　　　　　　**SEVENTH CAUSE OF ACTION**

13　　　　　　**(Breach of Fiduciary Duty – against HCCA and ROES 1 through 10)**

14　　　　62.　　The District refers to and realleges each and every allegation contained in paragraphs 1

15　through 61 above, and by this reference, incorporates the same herein as though fully set forth.

16　　　　63.　　HCCA was charged with managing and operating the District's hospital and related

17　clinics, and therefore owed a fiduciary duty to the District and the public to refrain from actions and/or

18　conduct that would cause injury to the District and/or to deprive the District of profit or economic

19　advantages which it was rightfully entitled by virtue of its hospital and related clinics and facilities.

20　　　　64.　　HCCA knowingly violated its fiduciary duties owed to the District by conduct

21　including but not limited to: (1) engaging in acts of fraud against the District; (2) converting the

22　District's property for HCCA's benefit and gain; (3) selling the District's assets without authorization,

23　including medical supplies and equipment, in order to secure sales proceeds in the amount of

24　$3,000,000 and keeping the proceeds of said sale for the benefit of HCCA; (4) recording a fraudulent

25　deed of trust against the District's real property without authorization; (5) intentionally interfering

26　with the seating of Board Member Senovia Gutierrez following her election in July 2017 in order to

27　obtain unauthorized loans/sales proceeds for HCCA's benefit, and (6) intentionally and improperly

28　using and/or misappropriating Build America Bond proceeds.

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

16

COUNTERCLAIM AGAINST HCCA

65.     In acting as described above, HCCA did not exercise the care required of managers in such a fiduciary role in that HCCA acted for its own benefit and to the detriment of the District, which resulted in the District losing money, property, and incurring unnecessary and considerable debt or other liabilities without receipt of any benefit to the District.

66.     As a proximate result of the acts of HCCA, as previously described, the District has been damaged in an amount to be determined at trial.

67.     HCCA's acts were willful, oppressive, fraudulent and malicious.  Such acts were committed with the intent to vex, annoy, and disrupt the District's ability to conduct business. Accordingly, an award of exemplary and punitive damages is warranted.

## EIGHTH CAUSE OF ACTION

**(Violation of California False Claims Act – against HCCA and ROES 1 through 10)**

68.     The District refers to and realleges each and every allegation contained in paragraphs 1 through 67 above, and by this reference, incorporates the same herein as though fully set forth.

69.     The District is a political subdivision within the meaning of California Government Code section 12650(b)(5).

70.     Although the full nature and extent of HCCA's wrongful conduct has not yet been discovered, on information and belief, HCCA violated the California False Claims Act as outlined in California Government Code section 12651 et seq. by engaging in the following conduct: knowingly presenting to the District, or causing to be presented, a false or fraudulent claim for payment; knowingly making, using or causing to be used or made a false record or statement material to a false or fraudulent claim; having possession, custody or control of public property or money used or to be used by the District and knowingly delivering or causing to be delivered less property than all of that property; knowingly making, using, or causing to be made or used a false record or statement material to an obligation to pay or transmit money or property to the District.

71.     As a result of HCCA's conversion, the District has been damaged in an amount according to proof.

72.     HCCA's conversion of the District's property was a substantial factor in causing the District's harm.

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

17

COUNTERCLAIM AGAINST HCCA

73. Pursuant to California Government Code section 12651 et seq., the District is entitled to recover its attorneys' fees, costs, and treble damages according to proof.

74. HCCA's acts were willful, oppressive, fraudulent and malicious. Such acts were committed with the intent to vex, annoy, and disrupt the District's ability to conduct business. Accordingly, an award of exemplary and punitive damages is warranted.

## NINTH CAUSE OF ACTION

### (Cancellation of Deed of Trust – against HCCA and ROES 1 through 10)

75. The District refers to and realleges each and every allegation contained in paragraphs 1 through 74 above, and by this reference, incorporates the same herein as though fully set forth.

76. There is in existence a written instrument that purports to be a deed of trust to certain real property owned by the District, which is generally referred to as the Evolutions Property, located in the County of Tulare, State of California, described in the deed attached hereto as Exhibit "2".

77. The Evolutions Deed of Trust generally seeks to secure payment and performance of purported promissory notes in favor of HCCA in the amount of $10,233,950.05. However, on information and belief, the District never executed any promissory notes in favor of HCCA, and HCCA has failed to provide copies of said promissory notes to the District despite demand. On information and belief, the promissory notes referenced in the Evolutions Deed of Trust, if such notes exist, are fraudulent and void.

78. The Evolutions Deed of Trust constitutes an unlawful and fraudulent lien against public property. The Evolutions Deed of Trust was purportedly executed by the District on September 27, 2017 by Dr. Benzeevi and recorded on September 28, 2017. However, the District did not authorize Dr. Benzeevi to execute the Evolutions Deed of Trust on its behalf, and the District was unaware of the existence of the Evolutions Deed of Trust until recently. Importantly, according to filings with the California Secretary of State, Dr. Benzeevi is the managing member of HCCA. At the time Dr. Benzeevi executed the Evolutions Deed of Trust, purportedly on behalf of the District, Dr. Benzeevi had no authority to execute the Evolutions Deed of Trust on behalf of the District and was acting for the exclusive benefit of HCCA and in breach of the fiduciary duties owed to the District.

79. As a result of HCCA's unlawful conduct, the District has been damaged in an amount

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

18

COUNTERCLAIM AGAINST HCCA

according to proof.  Further, if left outstanding, the Evolutions Deed of Trust will cause serious harm to the District in that it may prevent the District from using the Evolutions Property as collateral for loans necessary for the District's operational expenses.  Absent the ability to secure lending through use of the Evolutions Property as collateral, the District will suffer irreparable harm in that it may not be able to obtain funding necessary to re-open the District's hospitals and related healthcare clinics.

80.     HCCA's acts were willful, oppressive, fraudulent and malicious.  Such acts were committed with the intent to vex, annoy, and disrupt the District's ability to conduct business.  Accordingly, an award of exemplary and punitive damages is warranted.

### TENTH CAUSE OF ACTION

### (Declaratory Relief – against HCCA and ROES 1 through 10)

81.     The District refers to and realleges each and every allegation contained in paragraphs 1 through 80 above, and by this reference, incorporates the same herein as though fully set forth.

82.     An actual controversy has arisen and now exists between the District and HCCA concerning their respective rights and duties under the MSA and the Agreements.  Specifically, the District contends that:

(a)     HCCA had no legal authority under the MSA or the Agreements to execute the Evolutions Deed of Trust on behalf of the District;

(b)     The District has no obligation to pay HCCA a termination fee pursuant to Section 10(b) of the MSA because such payment violates the California Constitution, offends public policy and is prejudicial to the public's interests;

(c)     The Option Agreement, attached hereto as Exhibit "4" and incorporated herein by reference, is void as it violates the California Constitution, offends public policy and is prejudicial to the public's interest;

83.     The District desires a judicial determination of its rights and duties and a declaration as to its obligations, if any, to HCCA under the Agreements.

84.     A judicial declaration is necessary and appropriate at this time under the circumstances so that the District can ascertain its rights and duties under the Agreements.  The District has no adequate remedy available at law for relief from the matters set forth herein, and therefore seeks the

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

19

COUNTERCLAIM AGAINST HCCA

above-requested declaratory relief.

## ELEVENTH CAUSE OF ACTION

**(Equitable Subordination Pursuant to 11 U.S.C. § 510(C) and 105(A) – against HCCA and ROES 1 through 10)**

85.    The District refers to and realleges each and every allegation contained in paragraphs 1 through 84 above, and by this reference, incorporates the same herein as though fully set forth.

86.    To the extent that HCCA asserts a claim in the District's Chapter 9 case, its claim should be equitably subordinated in its entirety to all other claims.

87.    As outlined hereinabove, HCCA engaged in inequitable conduct, including but not limited to the following:

      a.    Fraudulently obtaining loans and/or sales proceeds in the name of the District, secured with the District's property or through the sale of District property, for HCCA's personal benefit and use.

      b.    Wrongfully diverting sales proceeds intended for the District to accounts controlled exclusively by HCCA.

      c.    Wrongfully obligating the District to pay Celtic Leasing in excess of $80,000 per month, or risk forfeiture of the District's property that was sold by HCCA under the leaseback arrangement as outlined hereinabove.

      d.    The District is informed and believes that the $3,000,000 sales proceeds obtained by HCCA was done to improperly shield those assets from unsecured creditors of the District.

      e.    Wrongfully selling or otherwise disposing of the District's assets without authorization, including the sale of District medical supplies and equipment.

      f.    Fraudulently recording the Evolutions Deed of Trust against the District's real property without authorization.

      g.    Conversion of the District's personal property and money for the exclusive benefit of HCCA.

88.    The conduct of HCCA was inequitable as to the other unsecured creditors and was

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

1  intended to result in injury to said creditors and to provide an advantage to HCCA over the District in

2  satisfaction of its claims.

3     89.     Pursuant to sections 510(c) and 105(a) of the Bankruptcy Code, any claims by HCCA

4  against the District should be subordinated to the claims of the District's other unsecured creditors as

5  such is consistent with the provisions of the Bankruptcy Code which authorizes a creditor's claim to

6  be subordinated to the claims of other creditors.

7                            **PRAYER FOR RELIEF**

8     WHEREFORE, the District prays for judgment against HCCA as follows:

9     A.     For damages according to proof;

10    B.     For punitive damages;

11    C.     For costs of suit incurred herein;

12    D.     For interest on Judgment from the date of entry of Judgment until paid in full at the

13  maximum legal rate of 10% per annum;

14    E.     For an accounting;

15    F.     For repayment to the District of the full amount by which HCCA has been unjustly

16  enriched and restitution of all sums obtained by HCCA for its unlawful actions and breaches of duty;

17    G.     For a constructive trust compelling HCCA to transfer all wrongfully obtained property

18  to the District pursuant to California Civil Code Sections 2223 and 2224;

19    H.     For a declaratory judgment that the District does not owe HCCA any termination fees

20  pursuant to the MSA at Section 10(b);

21    I.     For a declaratory judgment that the Option Agreement is void and invalid as it violates

22  California law and public policy;

23    J.     For a declaratory judgment and determination that the Deed of Trust is invalid;

24    K.     For an order that any secured claims asserted by HCCA against the District's

25  bankruptcy estate be equitably subordinated in its entirety;

26    L.     On the Eighth Cause of Action, for treble damages pursuant to California Government

27  Code section 12651 et seq.;

28    M.     For attorneys' fees; and

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

21
COUNTERCLAIM AGAINST HCCA

N.      For such other and further relief as the Court may deem just and proper.

Dated: January 4, 2018

                         McCORMICK, BARSTOW, SHEPPARD,
                               WAYTE & CARRUTH LLP

By                                   
                       Timothy L. Thompson
                       Mandy L. Jeffcoach
                       Nikole E. Cunningham
         Attorneys for Tulare Local Healthcare District dba
                   Tulare Regional Medical Center

36894-00000 4879522.1

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

22

COUNTERCLAIM AGAINST HCCA